IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIN MINSON                          :

    v.                              :   Civil Action No. DKC 12-2233

CITIMORTGAGE, INC.                   :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this consumer lending action is motion to dismiss filed by Defendant CitiMortgage, Inc. (ECF No. 12). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted.

**I. Background**

Plaintiff Erin Minson, proceeding *pro se*, commenced this action on June 25, 2012, by filing a complaint against Defendant CitiMortgage, Inc., in the Circuit Court for Charles County, Maryland. The complaint, which is inartfully drafted, relates to Defendant's alleged failure to respond, or to respond adequately, to Plaintiff's "Qualified Written Request" and "Request for First & Second Admissions" concerning a mortgage on her home. According to Plaintiff, Defendant asserted that it had "no contractual obligation to produce and/or disclose and/or

comply" with these requests; therefore, there is "no contractual obligation between Plaintiff and Defendant" and "Defendant has no legal right to continue any collection activities [and/or] foreclosure[] against Plaintiff." (ECF No. 4 ¶ 7). Plaintiff "demands the court to compel Defendant to . . . comply" with these requests or "to give [her] a full deed of release" from her debt. (*Id*.). She further alleges, in conclusory fashion, that "Defendant has no legal authority to proceed with collection activities (including foreclosure)." (*Id*. at ¶ 10).

Plaintiff attaches to the complaint a document entitled "Qualified Written Request/Validation of Debt," dated April 24, 2012, citing "12 USC § 2605(e) of the Real Estate Settlement Procedures Act ('RESPA') and . . . 15 USC § [1692g] of the Fair Debt Collection Practices Act ('FDCPA')," referencing a loan in connection with property she owns in Waldorf, Maryland. (ECF No. 4-1, at 1). Also attached is a document entitled "Plaintiff Request for First and Second Admissions," dated May 15, 2012, which demands a response within ten days in light of the fact that Defendant allegedly "failed to fully respond to the 'Qualified Written Request' and ha[s] not produced legal assignment documents and transfers showing that CitiMortgage has been given authorization from the 'lender' to collect [and/or] foreclose[.]" (ECF No. 4-2, at 1).

Observing that the complaint appears to rely on federal statutes, Defendant removed to this court on July 27, 2012, on the basis of federal question jurisdiction. Soon thereafter, Defendant filed a motion for more definite statement, asserting that "because of the vagueness of Plaintiff's pleading[], [it was] unable to decipher sufficient information from the [c]omplaint to comprehend what Plaintiff is claiming, thus rendering a proper response . . . impossible." (ECF No. 9-1, at 2). That motion was denied by a memorandum opinion and order issued November 9, 2012, and Defendant was directed to file either a motion to dismiss or an answer to the complaint within fourteen days.

On November 26, 2012, Defendant filed the pending motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12).[1] Plaintiff opposed that motion on December 6 (ECF No. 16), and Defendant replied on December 26 (ECF No. 17).

## II. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A

---

[1] On November 15, Plaintiff filed a motion to dismiss her own complaint with prejudice. (ECF No. 11). After Defendant consented to this relief, Plaintiff filed a "motion for judgment" on December 6, asserting that the "language [of the prior motion] was incorrect" and requesting that the motion for judgment be substituted. (ECF No. 15, at 1). Both of these motions will be denied as moot.

plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the

4

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**III. Analysis**

In denying Defendant's prior motion for more definite statement, the court construed Plaintiff's complaint as "raising claims under the RESPA and FDCPA provisions identified in [her] 'Qualified Written Request/Validation of Debt.'" (ECF No. 10, at 4). Specifically, Plaintiff alleges that Defendant failed to investigate and respond promptly to a Qualified Written Request ("QWR") under RESPA, as required by 12 U.S.C. § 2605(e), and a request for validation of debt under the FDCPA, 15 U.S.C. § 1692g. Defendant contends that Plaintiff has failed to state a claim under either provision.

**A. Qualified Written Request under RESPA**

As the United States District Court for the Eastern District of Virginia recently explained:

> RESPA mandates good faith estimates and disclosure of settlement terms and interest rates from lenders in order to allow

> consumers to evaluate whether they can afford all aspects of their loan. *See* 12 U.S.C. § 2601(a)-(b). Regarding Plaintiff's purported requests under RESPA, 12 U.S.C. § 2605(e) states that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days." (emphasis added). A "qualified written request" is defined as
>
>> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (1) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
>
> 12 U.S.C. § 2605(e)(1)(B). Creditors have sixty days following the receipt of a qualified written request to make requested changes to the borrower's account, notify the borrower of the results of any investigation pertaining to the account, and transmit the name and telephone number of a representative who can answer any questions about the account. 12 U.S.C. § 2605(e)(2).

*Fedewa v. J.P. Morgan Chase Bank, N.A.*, --- F.Supp.2d ----, 2013 WL 364354, at *5 (E.D.Va. 2013) (internal emphasis removed).

In moving to dismiss Plaintiff's RESPA claim, Defendant argues that the document attached to Plaintiff's complaint does not constitute a QWR because it does not relate to the servicing

6

of a loan. Under RESPA, "servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). The purported QWR attached to Plaintiff's complaint recites:

> It is not my intention to avoid paying any obligations that I may owe. In order to make arrangements to pay an obligation which is owed, please document and verify the "debt" by complying in good faith with this request for validation and take notice that I am disputing your accounting practice and the amount owed (the alleged shortfall in the Escrow Account).

(ECF No. 4-1, at 1). "To comply with this request," the document seeks, *inter alia*, (1) "[a] certified copy of the original promissory note and deed of trust"; (2) "a copy of the account and general ledger statement showing the loan history"; (3) "the name, address, and telephone number of the present owner of the obligation"; (4) the "name and address of all persons, corporations, associations and/or any other parties having an interest in the legal proceedings relative to the alleged debt"; (5) "a copy of the Form 1003 (loan application) and the appraisal report for the subject property that was relied on at the time of closing"; (6) "copies of any and all

7

documents related to the application for, and the settlement and closing of this loan"; and (7) "the Tax ID number, name and address of the individual(s) or entity(ies) receiving IRS form 1099 Interest Income since the inception of this loan." (*Id*. at 1-2).

In determining whether a given request constitutes a QWR, courts have drawn a distinction between communications related to the servicing of the loan, which are covered under RESPA, and those challenging the validity of a loan, which are not. In *Ward v. Security Atlantic Mortg. Electronic Registration Systems, Inc.*, 858 F.Supp.2d 561, 574-75 (E.D.N.C. 2012), the court considered facts roughly analogous to those presented here:

> Plaintiffs include as an exhibit to the amended complaint a document entitled "Qualified Written Request" dated March 19, 2010. A fair reading of this document, however, leads the court to conclude that it served as a communication challenging the validity of the loan and not a communication relating to the servicing of the loan as defined by statute. Indeed, the letter seeks *inter alia* copies of loan documents, assignments of the deed of trust and promissory note and copies of property inspection reports and appraisals and a loan transactional history. *See Junod v. Dream House Mortg. Co.*, No. CV 11-7035-ODW, 2012 U.S. Dist. LEXIS 3865, at *11-*12, 2012 WL 94355, at *3-*4 (C.D.Cal. Jan. 5, 2012) (explaining copies of the promissory note and deed of trust and "a complete life of loan transactional history" are "not the type of information RESPA contemplates"). In

> the letter, Plaintiffs also claim they were
> not provided appropriate disclosures prior
> to closing and "may be [ ] victim[s] of
> predatory lending." *See DeVary v.
> Countrywide Home Loans, Inc.*, 701 F.Supp.2d
> 1096, 1108 (D.Minn. 2010) (explaining
> requests regarding the financing of the
> original loan, rather than information
> regarding the servicing thereof, are not
> covered by RESPA). There are no allegations
> in the amended complaint regarding
> irregularities in BAC's servicing of the
> loan and the notice does not identify
> purported errors with Plaintiffs' account or
> ask questions relating to BAC's servicing
> thereof. *See Marsh v. BAC Home Loans
> Servicing*, No. 2:09-CV-813-FTM-29DNF, 2011
> U.S. Dist. LEXIS 33733, at *21-*22, 2011 WL
> 1196415 at *8 (M.D.Fla. March 29, 2011)
> (finding the notice sent by plaintiff did
> not qualify as a valid QWR because
> "[n]othing in the notice indicates that
> there was a problem with the servicing of
> the loan (e.g., the way BAC received
> plaintiffs' scheduled periodic payments due
> under the loan)"); *Hintz v. JPMorgan Chase
> Bank, N.A.*, No. 10-2825, 2011 U.S. Dist.
> LEXIS 12416, at *45, 2011 WL 579339 at *8
> (D.Minn. Feb. 8, 2011) ("the letters were
> not QWRs because [p]laintiffs did not
> identify purported errors in their account
> or ask questions related to Chase's
> servicing of their loan," and because
> "[p]laintiffs' letters had no relation to
> Chase's receipt or application of their
> payments"). Accordingly, Plaintiffs' March
> 2010 notice did not qualify as a valid QWR
> and thus BAC's failure to respond thereto
> does not subject BAC to RESPA liability.

(Internal record citation and footnote removed).

The document attached to Plaintiff's complaint does not constitute a QWR for essentially the same reasons. Although it reflects that Plaintiff intended that it serve as a QWR and

9

specifically cites RESPA, in substance, it "seeks copies of loan documents, verification of the identity of the holder in due course of the loan, and proof of the servicer's authority to service the loan[.]" *Bravo v. MERSCORP, Inc.*, No. 12-CV-884 (ENVV) (LB), 2013 WL 1652325, at *3 (E.D.N.Y. Apr. 16, 2013) (finding a "correspondence falls short of the statutory definition of a QWR" where, despite the fact that it "reflects that plaintiff intended to give formal notice and includes an explicit reference to RESPA," it merely seeks documents to verify the loan). The document does not relate to "servicing," as that term is defined under RESPA, because it "says nothing about defendant['s] receipt of scheduled periodic payments or the amounts of such payments." *Bravo*, 2013 WL 1652325, at *3; *see also Dides v. Ocwen Loan Servicing, LLC*, Civ. No. WMN-12-2989, 2013 WL 2285371, at *2 (D.Md. May 21, 2013) ("the permissible scope of Qualified Written Requests under RESPA is limited to information related to the servicing of loans, specifically the receipt of payments from a borrower and the making of payments of principal and interest"); *DeVary*, 701 F.Supp.2d at 1108 (requests seeking "information regarding . . . financing of the original loan, rather than information regarding the servicing of that loan" are not "covered by RESPA"); *Luther v. Wells Fargo Bank*, Civ. No. 4:11cv00057, 2012 WL 4405318, at *7 (W.D.Va. Aug. 6, 2012) (finding document not a

QWR where it did not "allege any irregularities of Wells Fargo's servicing of the loan, and . . . [did] not positively identify purported errors with [the plaintiff's account] or ask any questions about Wells Fargo's practice of serving the loan"). While the document submitted by Plaintiff makes clear that she was "disputing [Defendant's] accounting practice and the amount owed" (ECF No. 4-1, at 1), this "bare assertion [did] not provide the servicer with 'sufficient detail' as to why plaintiff[] believe[d] the balance [was] incorrect," *Marsh*, 2011 WL 1196415, at *8 (quoting 12 U.S.C. § 2605(e)(1)(B)). Indeed, the thrust of the request is to challenge Defendant's authority "to proceed with collection activities (including foreclosure)." (ECF No. 4 ¶ 10). Thus, the document did not constitute a valid QWR, and Defendant cannot be liable under RESPA for failing to respond fully.

In any event, Plaintiff has not stated a claim for relief under RESPA because she has "fail[ed] to allege any pecuniary loss attributable to the RESPA violation." *Ward*, 858 F.Supp.2d at 575; *see also Bravo*, 2013 WL 1652325, at *3 ("Even if the communication were a QWR, defendants assert correctly that plaintiff fails to state a claim, because he pleads neither actual damages flowing from the charged RESPA violation nor facts showing a pattern or practice of noncompliance with the QWR provisions of RESPA warranting statutory damages under 12

11

U.S.C. § 2605(f)"). Rather, Plaintiff seeks only injunctive relief, which, as noted by Defendant, is "unavailable in RESPA private actions." *Mullinax v. Radian Guar. Inc.*, 199 F.Supp.2d 311, 335 (M.D.N.C. 2002). Accordingly, Plaintiff's RESPA claim is subject to dismissal.

**B.    Validation of Debt under FDCPA**

Plaintiff's claim under the FDCPA fares no better. Under the "validation of debts" provision of the FDCPA, a debt collector is required, within five days after initial communication with the consumer regarding collection of a debt, to send the consumer "a written notice containing . . . a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector[.]" 15 U.S.C. § 1692g(a)(3). Subsection (b) of the same rule provides that the debt collector, upon receipt of such notice from the consumer within the thirty-day window, must "cease collection of the debt . . . until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b).

It is unclear how the document submitted by Plaintiff could implicate these provisions. Typically, complaints alleging violation of § 1692g relate to continued debt collection activities after a request is transmitted, but before validation is provided. Plaintiff does not allege that this has occurred. It is well-settled, moreover, that the "servicer of a loan is not a 'debt collector' under the FDCPA," at least where it began servicing the loan before the borrower's default. *Patrick v. PHH Mortg. Corp.*, --- F.Supp.2d ---, 2013 WL 1314538, at *11 (N.D.W.Va. Mar. 27, 2013) (citing *Blick v. Wells Fargo Bank, N.A.*, No. 3:11-cv-00081, 2012 WL 1030137, at *7 (W.D.Va. Mar. 27, 2012); *see also Jesse v. Wells Fargo Home Mortg.*, 882 F.Supp.2d 877, 879 (E.D.Va. 2012) ("Here, Wells Fargo is a servicer of residential mortgage loans, not a debt collector, and is, therefore, exempt from the FDCPA" (internal citation omitted)). Although the complaint does not identify Defendant's role vis-à-vis Plaintiff's loan, the record supports that Defendant is the loan servicer, and Plaintiff has not alleged that it is a debt collector, much less shown how it could be liable under the FDCPA. Thus, Plaintiff has failed to state a claim in this regard and her complaint must be dismissed.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion to dismiss will be granted.  A separate order will follow.

```
                              _____/s/_____
                              DEBORAH K. CHASANOW
                              United States District Judge
```